[No. D035333. Fourth Dist., Div. One. Jan. 2, 2001.]

GREG DISTEFANO, Plaintiff and Appellant, v.
JOHN GLENN FORESTER, Defendant and Respondent.

## COUNSEL

The Traut Law Firm, James R. Traut and Eric V. Traut for Plaintiff and Appellant.

Horvitz & Levy, Barry R. Levy, Julie L. Woods; Brownwood & Rice and Robert S. Rucci for Defendant and Respondent.

## OPINION

NARES, J.—

### INTRODUCTION

In April 1998, plaintiff and appellant Greg Distefano (Distefano) and defendant and respondent John Glenn Forester (Forester) were both engaged in the sport of "off-roading." Distefano was riding his motorcycle on a dirt trail, approaching the crest of a small blind hill. At the same time, Forester was ascending the other side of the same blind hill in a dune buggy. Neither Distefano nor Forester could see the other approaching the top of the hill. Forester's dune buggy collided head-on with Distefano's motorcycle, and Distefano suffered serious injuries.

Distefano brought a negligence action against Forester, who moved for summary judgment on the ground the action was barred under the doctrine of primary assumption of the risk considered in *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*) and *Ford v. Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769] (*Ford*) (hereafter also referred to as the *Knight* primary assumption of the risk doctrine or the *Knight* rule).[1] The court granted the motion and entered judgment in Forester's favor, and Distefano appealed.

We must decide whether Distefano's action is barred as a matter of law under the *Knight* primary assumption of the risk doctrine. The resolution of this issue requires us to revisit the questions of duty and assumption of risk in a recreational or sports setting considered in *Knight* and *Ford*, and to

---

[1] As we shall discuss, the *Knight* rule holds that a participant in a recreational activity "breaches a legal duty of care to other participants . . . only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320, fn. omitted.)

consider whether the provisions of two California Vehicle Code[2] sections (§§ 38305 & 38316) governing the operation of "off-highway" vehicles abrogate Forester's primary assumption of the risk defense.

*Summary of Holdings*

Applying the *Knight* rule, we hold that the sport of off-roading involves inherent risks that the participants in this recreational activity may be involved in inadvertent motor vehicle collisions and may suffer serious injury or death. These inherent risks include the risk that coparticipants ascending a blind hill in motor vehicles from opposite directions might not be able to see one another in time to avoid a collision. We also hold that a participant in the sport of off-roading owes a duty to other participants not to injure them intentionally or to engage in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport, and a person who is injured while participating in such activity may not sue a coparticipant for negligence. We further hold that sections 38305 and 38316 impose no higher or different duty of care in abrogation of the *Knight* primary assumption of the risk doctrine, which thus still applies even if an off-roading participant's violation of the "basic speed law" provisions of section 38305, combined with Evidence Code section 669, creates a presumption of negligence under the negligence per se doctrine codified in that Evidence Code section. For purposes of assessing potential *tort* liability in this matter, we hold as a matter of law that Forester owed no duty to Distefano to drive his dune buggy at a slower speed or to one side of the dirt trail, to use a "spotter" at the crest of the blind hill, or to equip his vehicle with a "whipper." Because Distefano did not allege reckless conduct or a violation of section 38305 or section 38316 in his complaint for negligence, and there is no evidence that Forester intentionally injured Distefano or engaged in conduct that was so reckless as to be totally outside the range of the ordinary activity involved in off-roading, we conclude that Distefano's action is barred as a matter of law by the *Knight* primary assumption of the risk doctrine. Although Forester's conduct was negligent and may have constituted a violation of section 38305 or section 38316,[3] it is not actionable in tort. Forester is thus entitled to summary judgment in his favor. Accordingly, we affirm the judgment.

---

[2]All subsequent statutory references are to the Vehicle Code unless otherwise specified.

[3]We note that the California State Traffic Collision Report prepared by law enforcement following the accident ambiguously indicates at page 2, in the section titled "PRIMARY COLLISION FACTOR," that section 38305 was the "[VEHICLE CODE] SECTION VIOLATED," but no traffic citation was issued.

## Factual Background

The relevant facts are largely undisputed. On April 10, 1998, Distefano and Forester were both engaged in the sport of "off-roading"[4] on an unnamed dirt road in an area known as Ocotillo Wells in an unincorporated desert area of San Diego County. This area is used specifically for off-road recreation. It consists of natural terrain with blind hills, inherently uneven areas, and vegetation. There are no streets with established boundaries or markings. Instead, there are dirt trails or pathways that are ever changing due to unrestrained off-road vehicular activity and the forces of nature.

The Ocotillo Wells off-roading area has no traffic controls, and there are no posted speed limit, caution, yield, or right of way signs. Because this area is uncontrolled, off-roading participants can navigate off the main trails and maneuver any way they choose, including driving over the top of shrubbery and "jumping hills." Participants can go as fast as they want in this area, and "typical rules of the road" do not apply. One of the risks of off-roading at Ocotillo Wells is the risk that a participant approaching a blind hill might not be able to see another vehicle approaching the same hill from the opposite direction.

At the time of the incident from which this personal injury action arose, Distefano had more than 15 years of experience driving off-road vehicles. He had made about 100 trips to the Ocotillo Wells site, and he had a significant amount of experience in organizing off-road racing events. Distefano had previously engaged in off-road racing through an association known as "Score." Forester had 28 years of experience in recreational and competitive off-roading.

During the afternoon on the day in question, Distefano was riding his motorcycle on the right side of a narrow one-lane dirt trail, approaching the crest of a small blind hill, at the Ocotillo Wells off-roading site. He was going about 10 to 15 miles per hour. Next to Distefano on his left, traveling at the same speed in the same direction and on the left side of the same one-lane trail, was another motorcycle driven by a person who is not a party to the instant appeal. The trail was about 10 feet wide.

At the same time, Forester was ascending the other side of the same blind hill in a dune buggy. Forester was going about 40 miles per hour, approaching the motorcycles in the middle of the same dirt trail that Distefano and the

---

[4]We shall alternatively refer to off-roading as off-road recreation, a sport, a recreational activity, or a sport activity. We note that the terms "sport" and "recreation" are synonymous. (See Merriam Webster's Collegiate Dict. (10th ed. 1996) p. 1137, col. 2.)

other motorcyclist were using. Distefano and Forester could not see one another as they approached the crest of the hill. Forester's dune buggy crested the hill in the middle of the trail and became airborne about four to five feet off the top of the crest. At this moment, the approaching side-by-side motorcycles on the other side of the hill were about 20 feet from the crest.

Forester's dune buggy collided head-on with both motorcycles. Distefano's motorcycle collided with the front skid plate of the dune buggy, and Distefano was thrown from the motorcycle. The other motorcycle collided with the front right tire of the dune buggy, and the person riding that motorcycle was also thrown. Distefano suffered serious injuries as a result of the head-on collision.

## PROCEDURAL BACKGROUND

In January 1999, Distefano filed a form complaint seeking damages for the personal injuries and property damage he suffered in the accident and alleging that Forester "negligently, carelessly and imprudently" operated his dune buggy.

### A. *Forester's Motion for Summary Judgment*

Forester moved for summary judgment in September 1999, arguing that Distefano's action was barred by the primary assumption of the risk doctrine set forth in *Knight, supra,* 3 Cal.4th 296, and its progeny. In his moving papers, Forester sought to establish that (1) Distefano's injuries resulted from risks of injury that were obvious and inherent in the off-roading recreational activity in which the parties were participating when the accident occurred; (2) he (Forester) had not acted intentionally or recklesslessly in the manner in which he operated his dune buggy; and thus (3) he owed no duty to Distefano, who knew of, and assumed, the risk of injury.

### B. *Distefano's Opposition*

In his written opposition to Forester's summary judgment motion, Distefano contended that despite his awareness of the inherent risks involved in off-roading, Forester owed him a statutory duty of care as a matter of law under the "basic speed law" provisions set forth in section 38305, which proscribes the driving of "off-highway" motor vehicles "at a speed that is greater than is reasonable or prudent," and the provisions of section 38316 proscribing the driving of "off-highway" motor vehicles with a "willful and wanton disregard for the safety of other persons or property." Distefano also

asserted that Forester breached these statutory duties and increased the risks to Distefano over and above those inherent in off-roading, thereby rendering inapplicable the *Knight* primary assumption of the risk doctrine, by (1) cresting the blind hill in the center of the dirt trail at an excessive speed (30-40 miles per hour) in reckless disregard of Distefano's safety; (2) by failing to have another person act as a "spotter" on top of the blind hill to warn off-roading vehicles traveling up the same blind hill in the opposite direction; and (3) by failing to equip his dune buggy with a "whipper," a long antenna that would have given notice of his presence to approaching vehicles. Distefano claimed that Forester was not entitled to summary judgment because there were triable issues of material fact whether Forester drove his dune buggy in a reckless manner, and thereby breached statutory duties set forth in sections 38305 and 38316.

### C. *The Court's Ruling*

The court granted Forester's summary judgment motion and entered judgment in his favor and against Distefano. In a written decision, the court determined that unintentional collisions are an inherent risk in the sport of off-roading and rejected Distefano's contention that Forester's conduct in driving fast up the blind hill was totally outside the range of ordinary activity involved in this sport so as to be reckless and in breach of a duty of care owed to Distefano. The court explained: "In analyzing the nature of this sport of 'off-roading', it must be readily conceded that it involves an elevated degree of danger as a significant part of its fascination. It must be acknowledged that *inadvertent collisions are inevitable and inherent in this sport.* The terrain, the skill and experience of the driver, the weather, the nature of the equipment utilized, all play a significant role in the enjoyment of the sport. There are no 'speed limits' and one can go as fast as one[']s ability and equipment permit given the terrain and weather. Climbing sand dunes and riding dirt trails is the pursuit involved in this sport. As [Distefano] readily concedes, no one person or vehicle has any greater right to a dune or trail than another. In fact, [Distefano] conceded at his deposition that there is a risk that another vehicle could be approaching from another direction that one couldn't see on approach." (Italics added.)

The court stated it was important to note that Distefano's complaint did not allege Forester's conduct was reckless; it only alleged negligence. After analyzing the nature of the sport of off-roading and the inherent risks it involves, the court concluded that the *Knight* primary assumption of the risk doctrine barred liability for Forester's alleged conduct: "It cannot be gainsaid but that the very nature of the sport of 'off-roading' is driving activity that would not be countenanced on streets and highways, such as[] unsafe

speeds, stirring up dust, becoming airborne on hills and cresting dunes. It is an activity which for all intents and purposes has no rules. It is a sport which may readily be characterized by the phrase: 'Thrills, chills, and spills.' [¶] Thus, from an analysis of the nature of the sport activity itself and the manner in which it is conducted there is an inherent risk of injury, serious injury or even death, in the conduct of this sport. In this context then, following the rule of *Knight*, the court must apply the Primary Assumption of the Risk Doctrine which, as noted above, compels the granting of the Motion for Summary Judgment."

The court rejected Distefano's argument that the *Knight* primary assumption of the risk doctrine was inapplicable because Forester owed and breached a statutory duty of care under the basic speed law provisions set forth in section 38305 and the provisions of section 38316 proscribing reckless driving. Applying the foregoing code sections to the facts of this case, and considering the nature of the sport of off-roading and the equipment used in this sport, the court concluded that driving at a speed that is not reasonable or prudent for conditions is ordinary careless conduct for purposes of the basic speed law set forth in section 38305. The court also stated that racing up and down dirt trails and sand dunes in order to become airborne is part of this sport and, although such conduct is careless, "within the context of the sport [it] is not a 'willful and wanton disregard for the safety of other persons or property' [within the meaning of section 38316] so as to preclude the application of the primary assumption of the risk doctrine by establishment of a separate, distinct or additional superseding duty of care."

In November 1999, the court entered judgment in favor of Forester and against Distefano. Distefano's timely appeal followed.

## STANDARD OF REVIEW

■ In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392] (*Branco*).) In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121-1122 [63 Cal.Rptr.2d 359].)

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to

judgment as a matter of law. Because the granting of a summary judgment motion involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion. (*Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1408 [57 Cal.Rptr.2d 386].) We strictly construe the evidence of the moving party and liberally construe that of the opponent, "and any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Branco, supra,* 37 Cal.App.4th at p. 189.)

## DISCUSSION

The principal issue we must decide is whether Distefano's personal injury action against Forester is barred as a matter of law by the primary assumption of the risk doctrine under the principles set forth in *Knight, supra,* 3 Cal.4th 296, and its progeny. We begin with a discussion of the applicable legal principles that guide our analysis.

### A. *Applicable Legal Principles*

In *Knight, supra,* 3 Cal.4th 296, the California Supreme Court "attempted to clarify" the doctrine of assumption of risk. (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 537 [34 Cal.Rptr.2d 630, 882 P.2d 347].) In *Knight,* which involved the claim of a plaintiff who sought damages for injuries she sustained during an informal touch football game, the high court "considered how the adoption of comparative negligence in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] affected the doctrine of assumption of risk in a sports setting." (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1067 [68 Cal.Rptr.2d 859, 946 P.2d 817] (*Cheong*).) Three justices signed the *Knight* plurality opinion, and Justice Mosk wrote a concurring opinion generally agreeing with its analysis. (*Cheong, supra,* 16 Cal.4th at p. 1067, citing *Knight, supra,* 3 Cal.4th at pp. 321-322 (conc. opn. of Mosk, J.).) In the Supreme Court's *Cheong* majority opinion, four justices noted that the court had unanimously restated, in two post-*Knight* decisions, the basic principles of the *Knight* lead opinion as the controlling law. (*Cheong, supra,* 16 Cal.4th at p. 1067, citing *Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at pp. 537-538, 541, & *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 479-481 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

In *Cheong, supra,* 16 Cal.4th 1063, the Supreme Court explained that there is a distinction "between (1) primary assumption of risk—'those instances in which the assumption of risk doctrine embodies a legal conclusion that there is "no duty" on the part of the defendant to protect the

plaintiff from a particular risk'—and (2) secondary assumption of risk— 'those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty.' [Citation.] Primary assumption of risk, when applicable, completely bars the plaintiff's recovery. [Citation.] The doctrine of secondary assumption of risk, by contrast, 'is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties.' [Citation.] Whether primary or secondary assumption of risk applies 'turns on whether, in light of the nature of the sporting activity in which defendant and plaintiff were engaged, defendant's conduct breached a legal duty of care to plaintiff.' [Citation.] The test is objective; it 'depends on the nature of the sport or activity in question and on the parties' general relationship to the activity' rather than 'the particular plaintiff's subjective knowledge and awareness . . . .' [Citation.]" (*Cheong, supra,* 16 Cal.4th at pp. 1067-1068, quoting *Knight, supra,* 3 Cal.4th at pp. 308 & 313-315.)

Again quoting *Knight,* the *Cheong* court further explained that, " '[a]s a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.)' [Citation.] This general rule, however, does not apply to coparticipants in a sport, where 'conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. . . . In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant. [¶] Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, . . . defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport. . . . [¶] In some situations, however, the careless conduct of others is treated as an "inherent risk" of a sport, thus barring recovery by the plaintiff.' [Citation.] Courts should not 'hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport' because 'in the heat of an active sporting event . . . , a participant's normal energetic conduct often includes accidentally careless behavior. . . . [V]igorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct.' [Citation.] [¶] For these reasons, *the general test is 'that a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport.' "* (*Cheong, supra,* 16 Cal.4th at p. 1068, italics added, quoting *Knight, supra,* 3 Cal.4th at pp. 315-316, 318, 320, fn. omitted.)

Knight thus stands for the proposition that a participant who is injured in a sporting activity by a coparticipant may sue that coparticipant only for intentional infliction of injury or tortious behavior "so reckless as to be totally outside the range of the ordinary activity involved in the sport" (*Knight, supra,* 3 Cal.4th at pp. 320-321), and not for mere negligence. The *Knight* rule, however, "does not grant unbridled legal immunity to all defendants participating in sporting activity. The Supreme Court has stated that '. . . it is well established that defendants generally do have a duty to use due care *not to increase the risks to a participant over and above those inherent in the sport.*' ([*Knight, supra,*] 3 Cal.4th at pp. 315-316, italics added.) Thus, even though 'defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself,' they may not increase the likelihood of injury above that which is inherent. (*Id.* at p. 315.)" (*Campbell v. Derylo* (1999) 75 Cal.App.4th 823, 827 [89 Cal.Rptr.2d 519] (*Campbell*).)

In *Freeman v. Hale* (1994) 30 Cal.App.4th 1388 [36 Cal.Rptr.2d 418] (*Freeman*), the Court of Appeal advanced a test (the *Freeman* test) for determining what risks are inherent in a sport: "[C]onduct is totally outside the range of ordinary activity involved in the sport (and thus any risks resulting from that conduct are not inherent to the sport) if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport." (*Id.* at pp. 1394, 1396, fn. omitted ["[D]rinking alcoholic beverages is not an activity within the range of activities 'involved' in the sport of skiing, and . . . the increased risks presented by the consumption of alcohol are not inherent in the sport of skiing"]; accord, *Record v. Reason* (1999) 73 Cal.App.4th 472, 484 [86 Cal.Rptr.2d 547] [in the sport of "tubing" (riding an inner tube towed by a motor boat) a driver's conduct in making too sharp a turn and driving in excess of the speed recommended by the tube manufacturer was not totally outside the range of ordinary activity involved in the sport because imposing legal liability for such conduct would chill the driver's willingness to provide the exciting ride that appears to be necessary to tubing, and the risk of injury from such conduct is thus inherent in the sport]; *Campbell, supra,* 75 Cal.App.4th at pp. 829-830 [triable issue of fact existed whether in the sport of snowboarding the defendant's use of a snowboard unequipped with a retention strap required by safety regulations posted at a ski resort unnecessarily increased the risk of injury from runaway ski equipment beyond that inherent in snowboarding, where use of such strap would not chill vigorous participation in that sport].)

B. *Analysis*

Before we apply the foregoing legal principles, we note as a preliminary matter that Forester, to be entitled to summary judgment as the moving

defendant, carried the burden of establishing as a matter of undisputed fact either (1) that one of the necessary elements of Distefano's negligence claim against him could not be established, or (2) that there was a complete defense to that cause of action. (See *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926 [68 Cal.Rptr.2d 571]; Code Civ. Proc., § 437c, subd. (o)(2).) █ "Since the existence of the primary assumption of the risk is dependent upon the existence of a legal duty, and since duty is an issue of law to be decided by the court, the applicability of that defense is amenable to resolution by summary judgment. [Citation.] When [as here] a defendant moves for summary judgment on the basis of implied assumption of the risk, he or she has the burden of establishing the plaintiff's primary assumption of the risk by demonstrating that the defendant owed no legal duty to the plaintiff to prevent the harm of which the plaintiff complains. [Citation.]" (*Freeman, supra,* 30 Cal.App.4th at p. 1395.)

Contending that he met that burden, Forester sought to establish that Distefano's injuries resulted from risks that were inherent in the off-roading recreational activity in which he and Distefano were participating when the accident occurred. Forester also argued that he had not acted intentionally or recklesslessly in the way he operated his dune buggy; and thus he owed no duty to Distefano, who knew of, and assumed, the risk of injury.

We now proceed to apply the *Knight* rule. █ In determining de novo whether Forester met his burden of establishing by undisputed facts Distefano's primary assumption of the risk, our inquiry must first focus on the objective nature of the subject sport activity, off-roading, and the parties' general relationship to that activity. (*Cheong, supra,* 16 Cal.4th at p. 1068, citing *Knight, supra,* 3 Cal.4th at p. 313.)

### 1. *Nature and Inherent Risks of Off-roading, and the Parties' Participation*

Distefano does not dispute certain material facts concerning the nature of off-roading, the site where the accident occurred, and the off-roading activities of the parties that led to his injury. We note the court found that the very nature of the sport of off-roading is "driving activity that would not be countenanced on streets and highways, such as[] unsafe speeds, stirring up dust, [and] becoming airborne on hills and cresting dunes," and "[i]t is an activity which for all intents and purposes has no rules." Finding also that off-roading is a sport that may be readily characterized by the phrase "[t]hrills, chills, and spills," the court concluded that "there is an inherent risk of injury, serious injury or even death, in the conduct of this sport."

The undisputed facts in this case support the court's characterization of the nature of off-roading and the risks inherent in this sport. The accident

occurred in an unincorporated area that is used specifically for off-road recreation, and consists of natural terrain with blind hills, inherently uneven areas, and vegetation. There are no streets with established boundaries or markings. Instead, there are dirt trails that constantly change as a result of vehicular activity and the forces of nature.

During his deposition, Distefano testified there are no traffic controls and no posted speed limit, caution, yield, or right of way signs. He conceded that because this area is uncontrolled, off-roading participants can navigate off the main trails and maneuver any way they choose, including driving over the top of shrubbery and jumping over hills. He also stated that off-roading participants can go as fast as they want in this area, and typical rules of the road do not apply.

The undisputed facts show that a posted sign warned of the risks of off-roading:

> "OFF HIGHWAY VEHICLE USE
> MAY BE HAZARDOUS[.]
> YOUR USE OF PROTECTIVE APPAREL,
> SKILL LEVEL, VEHICLE CONDITION,
> TERRAIN, WEATHER, COMMON SENSE
> AND FOLLOWING PARK RULES
> ALL AFFECT YOUR SAFETY[.]
> RIDE AT YOUR OWN RISK[.]"

On the day in question, Distefano was riding his motorcycle on the right side of a narrow one-lane dirt trail at the Ocotillo Wells site, approaching the crest of a small blind hill. He was going about 10 to 15 miles per hour. Another motorcyclist was riding next to Distefano on his left, traveling at the same speed in the same direction and on the left side of the same one-lane trail. The trail was about 10 feet wide. At the same time, Forester was driving his dune buggy up the other side of the same blind hill at a speed of about 40 miles per hour, approaching the motorcycles in the middle of the same dirt trail that Distefano and the other motorcyclist were using. Neither Distefano nor Forester could see the other approaching the crest of the hill. Both were experienced off-roading enthusiasts. Distefano had made about 100 trips to the Ocotillo Wells site.

Forester's dune buggy crested the blind hill in the middle of the trail and became airborne off the top of the crest. At this moment, the two motorcycles were ascending on the other side of the hill about 20 feet from the

crest. Forester's dune buggy collided head-on with both motorcycles, and Distefano suffered serious injuries.

Distefano does not dispute that the off-roading recreational activity in which he and Forester participated was inherently dangerous. During his deposition, he conceded that one of the risks of off-roading at Ocotillo Wells was the risk that a participant approaching a blind hill might not be able to see another vehicle approaching the same hill from the opposite direction.

Given the foregoing undisputed facts, we conclude the sport of off-roading involves inherent risks that the participants in this recreational activity may be involved in inadvertent motor vehicle collisions and may suffer serious injury or death. These inherent risks include the risk that coparticipants ascending a blind hill in motor vehicles from opposite directions might not be able to see one another in time to avoid a collision.

### 2. *Intentional or Reckless Conduct Not Pleaded*

For purposes of determining whether Forester met his burden of establishing by undisputed facts his primary assumption of the risk defense under the *Knight* rule, our next inquiry is whether there is evidence that he intentionally injured Distefano or engaged in conduct that was so reckless as to be totally outside the range of the ordinary activity involved in the sport of off-roading. (*Cheong, supra,* 16 Cal.4th at p. 1068.) The record shows that Distefano did not argue in the summary judgment proceedings (nor does he argue on appeal) that Forester intentionally injured him. Distefano does not allege in his form complaint that Forester's conduct was intentional or reckless. His pleading alleges only that Forester "*negligently,* carelessly and imprudently" operated his dune buggy. (Italics added.) Ordinary negligence is thus the only standard pleaded. As already discussed, under the *Knight* rule a participant who is injured in a sporting activity may not sue another participant for mere negligence. (*Cheong, supra,* 16 Cal.4th at p. 1068, citing *Knight, supra,* 3 Cal.4th at p. 320.)

In its written decision, the court noted Distefano's failure to plead in his complaint that Forester's conduct was reckless. On appeal, Distefano contends that case law would permit an amendment to his complaint to conform to proof, and the court erred by not considering his allegations outside his complaint that Forester's conduct was reckless and increased the risks to Distefano over and above those inherent in recreational off-road activity. We reject these contentions. ■ To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. (*Zavala v. Arce, supra,* 58 Cal.App.4th at p. 926.) If the opposing party's

evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion. (See *580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 18 [272 Cal.Rptr. 227]; *City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal.App.4th 633, 639 [10 Cal.Rptr.2d 465]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) ¶¶ 10:257 & 10:257.2, pp. 10-96 & 10-97 (rev. #1, 2000).) Distefano does not assert on appeal, nor does the record show, that he sought leave to amend his complaint before the hearing on Forester's summary judgment motion. We reject Distefano's implied contention that he may seek leave to amend his pleading for the first time on appeal.

### 3. Statutory Duties, Speeding, and Failure to Use a "Spotter" and "Whipper"

Distefano contends, however, that the *Knight* primary assumption of the risk doctrine does not bar his action because Forester owed him *statutory* duties of care as a matter of law under both the basic speed law provisions set forth in section 38305,[5] which (as already discussed) proscribes the driving of off-highway motor vehicles "at a speed greater than is reasonable or prudent," and the provisions of section 38316,[6] which proscribes the driving of off-highway motor vehicles with a "willful and wanton disregard for the safety of other persons or property." Distefano asserts that he is a member of the class of people protected by these sections, and he has shown there are triable issues of fact whether Forester breached these statutory duties and increased the risks to Distefano over and above those inherent in recreational off-roading, thereby rendering inapplicable the *Knight* primary assumption of the risk doctrine. Specifically, Distefano contends Forester drove the dune buggy with reckless disregard for the safety of others (including Distefano), and thereby breached his legal duties under sections 38305 and 38316 by (1) cresting the blind hill in the center of the dirt trail at an excessive speed (30-40 miles per hour); (2) failing to have another person act as a spotter on top of the blind hill to warn off-roading vehicles

---

[5]Section 38305 ("Basic speed law") (enacted by Stats. 1976, ch. 1093, § 26, p. 4947) provides: "No person shall drive an off-highway motor vehicle at a speed greater than is reasonable or prudent and in no event at a speed which endangers the safety of other persons or property."

[6]Section 38316 ("Reckless driving") (enacted by Stats. 1976, ch. 1093, § 26, p. 4947, and amended by Stats. 1983, ch. 1092, § 397, p. 4083) provides: "(a) *It is unlawful for any person to drive any off-highway motor vehicle with a willful and wanton disregard for the safety of other persons or property.* [¶] (b) Any person who violates this section shall, upon conviction thereof, be punished by imprisonment in the county jail for not less than five days nor more than 90 days or by fine of not less than fifty dollars ($50) nor more than five hundred dollars ($500) or by both such fine and imprisonment, except as provided in Section 38317." (Italics added.)

traveling up the same blind hill in the opposite direction; and (3) failing to equip his dune buggy with a whipper, a long antenna that would give notice of his presence to approaching vehicles. Distefano thus contends the court erred by granting summary judgment in favor of Forester because there are triable issues of material fact whether Forester engaged in speeding or reckless off-highway driving and thereby breached his statutory duties under sections 38305 and 38316. We reject these contentions.

We first conclude that Distefano's contentions are procedurally defective. Distefano failed to allege in his complaint that Forester's conduct violated any statutory duties owed to Distefano under sections 38305 and 38316. Although Distefano argued in his written opposition to the summary judgment motion that Forester breached legal duties imposed by sections 38305 and 38316, he has made no showing on appeal, nor can he, that he sought leave of court, before the summary judgment motion hearing, to amend his complaint to allege such claims. For reasons already discussed, Distefano may not seek leave to amend his pleading for the first time on appeal. (See *580 Folsom Associates v. Prometheus Development Co., supra,* 223 Cal.App.3d at p. 18; *City of Hope Nat. Medical Center v. Superior Court, supra,* 8 Cal.App.4th at p. 639; & Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶¶ 10:257 & 10:257.2, pp. 10-96 & 10-97 (rev. #1, 2000).)

Even were there no procedural bar to this appeal, Distefano's contentions are unavailing on the merits. The issue we must decide is whether the provisions of sections 38305 and 38316 pertaining to the operation of off-highway vehicles, together with Evidence Code section 669[7] (discussed, *post*), impose on participants in the sport of off-roading independent duties in tort—i.e., a duty under section 38305 to avoid driving an off-highway motor vehicle "at a speed greater than is reasonable or prudent," and a duty under section 38316 to avoid driving such vehicles with a "willful and wanton disregard for the safety of other persons or property"—despite the *Knight* primary assumption of the risk doctrine, thereby rendering a complete defense under the *Knight* rule unavailable to Forester. To resolve this issue,

---

[7]Evidence Code section 669 provides in part: "(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. [¶] (b) This presumption may be rebutted by proof that: [¶] (1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . ."

we must revisit the divergent pronouncements of the California Supreme Court in *Ford, supra,* 3 Cal.4th 339, *Knight, supra,* 3 Cal.4th 296, and *Cheong, supra,* 16 Cal.4th 1063, concerning the questions of duty and assumption of risk in a sports setting.

### i. *Ford*

In *Ford, supra,* 3 Cal.4th 339, the companion case to *Knight, supra,* 3 Cal.4th 296 (discussed *ante*) and one of the case law authorities on which Distefano relies, the plaintiff was injured when the back of his head struck a tree limb extending from a riverbank in a narrow channel of the Sacramento River Delta while water-skiing barefoot and backward. (*Ford, supra,* 3 Cal.4th at pp. 342-343.) He brought a negligence action against the driver of the boat that towed him. (*Id.* at p. 343.) The defendant driver moved for summary judgment, asserting that even had he been negligent in driving the boat, the plaintiff was barred from bringing the action by the common law " 'reasonable implied assumption of risk' " doctrine. (*Ibid.*) The trial court granted summary judgment in favor of the defendant, and the Court of Appeal affirmed. (*Id.* at p. 344.)

The Supreme Court in *Ford* granted review to resolve a conflict among the Courts of Appeal as to whether the " 'reasonable implied assumption of risk' " doctrine was recognized law in California. (*Ford, supra,* 3 Cal.4th at p. 344.) Of importance to the issues raised in the instant appeal, Justice Arabian, the author of the *Ford* lead opinion, raised sua sponte in that case the issue of whether a violation of a statute (there, Harb. & Nav. Code, § 658, subd. (d))[8] bearing on the scope of the defendant's duty would establish (as the plaintiff in *Ford* contended) a rebuttable presumption under Evidence Code section 669 that the defendant breached a duty of care owed to the plaintiff. (*Ford, supra,* 3 Cal.4th at p. 346.)

The high court in *Ford* did not resolve this issue. In its subsequent majority opinion in *Cheong, supra,* 16 Cal.4th 1063, authored by Justice Chin (discussed, *post*), the high court commented on the justices' divergent opinions in *Ford*, as well as on the holding in Justice Arabian's lead opinion in *Ford* that the plaintiff did not fall within the statutory class of protected persons for purposes of Evidence Code section 669: "Harbors and Navigation Code section 658, subdivision (d), prohibits ski boat drivers from

---

[8]Harbors and Navigation Code section 658, subdivision (d), provides: "No person shall operate or manipulate any vessel, towrope, or other device by which the direction or location of water skis, an aquaplane, or a similar device may be affected or controlled so as to cause the water skis, aquaplane, or similar device, or any person thereon, to collide with, or strike against, any object or person. This subdivision does not apply to collisions of two or more persons on water skis, aquaplanes, or similar devices being towed by the same vessel." (See *Ford, supra,* 3 Cal.4th at p. 346.)

operating a boat so as to cause a skier to collide with an object. [Citation.] The plaintiff [in *Ford*] argued the defendant had violated that statute, and, 'under the provisions of Evidence Code section 669, such a violation establishes a rebuttable presumption that defendant breached his duty of care to plaintiff.' [Citation.] [¶] This court disagreed. The lead opinion, speaking for one justice, concluded Harbors and Navigation Code 'section 658, subdivision (d), was intended to safeguard only the lives and property of third persons. Plaintiff does not fall within this protected class. (Evid. Code, § 669.) Accordingly, the statute does not impose a duty of care on defendant that is otherwise precluded under the principles set forth in *Knight, supra, ante*, at page 296.' (*Ford, supra,* 3 Cal.4th at p. 350 (opn. of Arabian, J.).) Justice Kennard, joined by Justices Panelli and Baxter, also concluded that the statute 'does not preclude application of the assumption of risk defense in this case,' but for different reasons based upon her dissenting opinion in *Knight.* (*Ford, supra,* 3 Cal.4th at p. 363.) Then Associate Justice George, joined by Chief Justice Lucas, and, in a separate opinion, Justice Mosk, concluded that Harbors and Navigation Code section 658 did impose a higher duty on the defendant than *Knight* otherwise would have, and therefore the trial court should not have granted summary judgment in favor of the defendant. (*Knight, supra,* 3 Cal.4th at pp. 364-369 (conc. & dis. opn. of George, J.), 369 (dis. opn. of Mosk, J.).)" (*Cheong, supra,* 16 Cal.4th at p. 1071 (maj. opn. of Chin, J.).)

### ii. *Cheong*

In 1997, our high state court revisited this issue in *Cheong, supra,* 16 Cal.4th 1063. The plaintiff in *Cheong* was injured when he and the defendant collided while they were both skiing. The defendant denied intentionally injuring the plaintiff or acting recklessly, but admitted he had been skiing too fast for existing conditions, and the collision occurred when he turned to the right to regain control and stop. (*Id.* at p. 1066 (maj. opn. of Chin, J.).) A Placer County ordinance[9] (the ordinance or skier responsibility ordinance) placed a duty on skiers to ski in a "safe and reasonable manner," and provided that skiers "shall assume and accept" the "inherent risks" of skiing, including collisions. (*Id.* at pp. 1066, 1069.) The trial court granted summary judgment in favor of the defendant, finding that a collision was an inherent risk of downhill skiing, and the plaintiff's negligence action was barred by the primary assumption of the risk rule announced in *Knight, supra,* 3

---

[9]The ordinance involved in *Cheong* was called the Skier Responsibility Code of Placer County (Placer Code, former § 12.130 et seq.). (*Cheong, supra,* 16 Cal.4th at p. 1069.) The *Cheong* court noted that the Placer County Board of Supervisors enacted the ordinance in 1984, several years before the high court decided *Knight, supra,* 3 Cal.4th 296, in 1992. (*Cheong, supra,* 16 Cal.4th at pp. 1069-1070.)

Cal.4th 296. (*Cheong, supra,* 16 Cal.4th at p. 1066.) The plaintiff appealed, arguing (among other things) that the ordinance imposed on the defendant a duty that abrogated the *Knight* primary assumption of the risk defense. (*Cheong, supra,* at pp. 1066-1067.) The Court of Appeal affirmed the judgment, and the Supreme Court granted the plaintiff's petition for review of the issue of whether the ordinance imposed a higher duty on the defendant than *Knight* established.[10] (*Cheong, supra,* at pp. 1067, 1069.)

The majority decision in *Cheong* affirmed the summary judgment in favor of the defendant skier. (*Cheong, supra,* 16 Cal.4th at pp. 1066, 1072 (maj. opn. of Chin, J.).) The *Cheong* majority held that the *Knight* primary assumption of the risk doctrine barred the plaintiff's negligence action because (1) a collision was an inherent risk of downhill skiing, (2) there was no evidence the defendant skier intentionally injured the plaintiff or acted recklessly, and (3) the skier responsibility ordinance did not bar application of the *Knight* rule because even assuming a local ordinance *could* modify the *Knight* rule and the defendant's conduct violated the ordinance, that ordinance did not impose a higher duty than that imposed by the *Knight* rule because the ordinance itself incorporated the doctrine of assumption of risk,[11] and the elements of Evidence Code section 669, subdivision (a) (hereafter Evidence Code section 669(a)), had not been met. (*Cheong, supra,* 16 Cal.4th at pp. 1066, 1069-1072 (maj. opn. of Chin, J.).)

In explaining the majority's holding that the elements of Evidence Code section 669(a) (see fn. 7, *ante*), had not been met, the author of the majority opinion, Justice Chin, stated that "[p]laintiff has not demonstrated that he is one of the class of persons the ordinance was intended to protect. By specifically stating that skiers assume the inherent risks of skiing, including the risk of collision and the risk that others will fail to ski within their own ability, the ordinance makes clear that petitioner, who was injured in a collision with a fellow skier, was not 'one of the class of persons for whose protection the . . . ordinance . . . was adopted.' ([Evid. Code,] § 669(a).) Accordingly [Evidence Code] section 669(a) does not aid plaintiff's position." (*Cheong, supra,* 16 Cal.4th at p. 1071 (maj. opn. of Chin, J.).)

In both his majority opinion and his separate concurring opinion in *Cheong*, Justice Chin acknowledged that the high court was still divided on,

[10]As already discussed, the *Knight* rule generally imposes on participants in a sporting activity the duty to refrain from intentionally injuring another participant, and to avoid engaging in "conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320, fn. omitted.)

[11]The ordinance, Placer Code former section 12.132, expressly provided that a skier " 'shall assume and accept the inherent risks of such activities insofar as the risks are reasonably obvious, foreseeable or necessary to the activities.' " (*Cheong, supra,* 16 Cal.4th at p. 1069 (maj. opn. of Chin, J.).)

and had not decided, the issue of whether a plaintiff injured during participation in a sporting activity may state a negligence cause of action against another participant, despite the *Knight* primary assumption of the risk doctrine, if the defendant participant's conduct has violated a statute and the four elements of Evidence Code section 669(a) are satisfied. In his majority opinion, Justice Chin stated: "Justice Arabian's opinion in *Ford* implicitly assumed, and the opinions of Justice George, joined by Chief Justice Lucas, and Justice Mosk expressly concluded, that if the four elements of [Evidence Code] section 669(a) were satisfied, that statute[12] creates tort liability between coparticipants in an active sport despite the *Knight* doctrine of primary assumption of risk. As the concurring opinion that I have filed in this case indicates, a number of the justices who have signed this majority opinion question whether this conclusion is correct. *We need not resolve the point here*, however, because, even if that conclusion is correct, the elements of [Evidence Code] section 669(a) have not been met in this case." (*Cheong, supra,* 16 Cal.4th at p. 1071 (maj. opn. of Chin, J.), italics added.)

In his separate concurring opinion in *Cheong*, Justice Chin explained that although he was the author of the majority opinion, he was writing separately to state another reason to reject the plaintiff's argument under Evidence Code section 669(a). He stated that "[*t*]*he majority opinion does not decide whether, assuming the four elements of [Evidence Code] section 669(a) are satisfied, that statute creates tort liability between coparticipants in an active sport notwithstanding our decision in [Knight, supra,]* 3 Cal.4th 296 . . . . [Citation.]" (*Cheong, supra,* 16 Cal.4th at p. 1078 (conc. opn. of Chin, J.), citing maj. opn. at p. 1071, italics added.)

Justice Chin also stated in his concurring opinion that he "would . . . hold that [Evidence Code] section 669(a) does not affect the assumption of risk principles established in *Knight*. *Knight* applies to this case, not [Evidence Code] section 669(a). [¶] As relevant, [Evidence Code] section 669(a) states, 'The failure of a person to exercise due care is presumed if' four requirements are met. This statute, however, does not establish tort liability. Rather, it merely 'codifie[s]' the rule that 'a presumption of *negligence* arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute.' (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151], italics added; see also *Ramirez* v. *Plough, Inc.* (1993) 6 Cal.4th 539, 547 [25 Cal.Rptr.2d 97, 863 P.2d 167, 27 A.L.R.5th 899] [citing [Evid. Code] section 669 for the proposition that 'proof of the defendant's violation of a statutory standard of

---

[12]Justice Chin was referring to Harbors and Navigation Code section 658, the statute involved in the *Ford* case. (See *Cheong, supra,* 16 Cal.4th at p. 1071 (maj. opn. of Chin, J.).)

conduct raises a presumption of negligence'].) Under *Knight*, however, a presumption of negligence is insufficient to make a participant in an active sport liable in tort to another participant." (*Cheong*, *supra*, 16 Cal.4th at p. 1078 (conc. opn. of Chin, J.).)

Justice Chin also explained in his concurring opinion that Evidence Code section 669(a) "states a rule of evidence only—a presumption of the failure to use 'due care'—not a rule of tort liability. The word 'duty' does not appear in the statute. *Knight* held that a participant in an active sport may sue a fellow participant only for reckless behavior or the intentional infliction of injury, and not for mere negligence. (*Knight*, *supra*, 3 Cal.4th at p. 320.) By establishing only a standard of negligence, [Evidence Code] section 669(a) does not apply to cases that *Knight* governs. The Law Revision Commission Comment to [Evidence Code] section 669 states, 'If the conditions listed in subdivision (a) are established, a presumption of negligence arises . . . . The presumption is one of simple negligence only, not gross negligence.' [Citation.] Because, 'As a general rule, persons have a duty to use *due care* to avoid injury to others, and may be held liable if their careless conduct injures another person' (*Knight*, *supra*, 3 Cal.4th at p. 315, italics added, citing Civ. Code, § 1714), as a general rule a presumption of the failure to use *'due care'* (Evid. Code, § 669, italics added) is also a presumption of a breach of duty giving rise to tort liability. But the basic teaching of *Knight* is that participants in an active sport have no duty to avoid merely negligent conduct." (*Cheong*, *supra*, 16 Cal.4th at p. 1079 (conc. opn. of Chin, J.).)

Finally, citing *Knight* for the proposition that primary assumption of risk involves a *reduction* of a defendant's duty of care, Justice Chin explained that under *Knight* and case authorities cited therein, "primary assumption of risk reduces the general duty to use 'due care' (or not act negligently) to a duty not to act intentionally or recklessly. If, as the Law Revision Commission Comment to [Evidence Code] section 669 states, the section's presumption is of simple negligence only, and not of gross negligence, it is certainly not a presumption of intentional or reckless conduct. The *Knight* standard of primary assumption of risk still applies even if the violation of an ordinance or statute, combined with Evidence Code section 669, creates a presumption of negligence." (*Cheong*, *supra*, 16 Cal.4th at p. 1079 (conc. opn. of Chin, J.).)

### iii. *Application of Law*

Here, unlike the plaintiffs in *Ford* and *Cheong*, Distefano is "one of the class of persons for whose protection" the statutes the defendant (Forester) allegedly violated were adopted within the meaning of Evidence Code

section 669(a)(4) (see fn. 7, *ante*). These statutes, sections 38305 and 38316 (see fns. 5 & 6, *ante*), expressly pertain to, and purport to govern, the operation of off-highway vehicles. It cannot be disputed that Forester's dune buggy was an off-highway vehicle within the meaning of these sections. Unlike the skier responsibility ordinance at issue in *Cheong*, sections 38305 and 38316 do not expressly incorporate the assumption of risk doctrine, and thus no argument can be made that drivers of off-highway motor vehicles (such as Distefano) are outside "the class of persons for whose protection the statute[s] . . . [were] adopted" (Evid. Code, § 669(a)(4)). The parties do not dispute that the remaining three elements set forth in Evidence Code section 669(a)(1)-(3) (see fn. 7, *ante*), are satisfied in this matter.

### a. *Section 38305*

Therefore, we now address the issue of whether the basic speed law provisions of section 38305, together with Evidence Code section 669, impose on Forester a higher duty (i.e., the duty to avoid driving his dune buggy "at a speed greater than is reasonable or prudent") than is established by the *Knight* rule, thereby abrogating that rule.

■ Witkin explains that "[w]hat constitutes due care under the circumstances is ordinarily a question of fact for the jury in each case. [Citation.] But the proper conduct of a reasonable person in particular situations may become settled by *judicial decision*, or be prescribed by *statute or ordinance*, and conduct below this standard is *negligence per se*, or negligence as a matter of law." (6 Witkin, Summary of Cal. Law (9th ed. 1988) § 818, p. 170, original italics.) Evidence Code section 669 codifies the common law doctrine of negligence per se. (*Vesely v. Sager, supra,* 5 Cal.3d at pp. 164-165; see generally 6 Witkin, Summary of Cal. Law, *supra,* § 819, pp. 171-173.)

■ In deciding the issue presented, we find persuasive and follow Justice Chin's analysis in his concurring opinion in *Cheong* (*supra,* 16 Cal.4th 1063). As noted (*ante*), Justice Chin stated that Evidence Code section 669(a) "does not establish tort liability. Rather, it merely 'codifie[s]' the rule that 'a presumption of *negligence* arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute.' " (*Cheong, supra,* 16 Cal.4th at p. 1078 (conc. opn. of Chin, J.), original italics, quoting *Vesely v. Sager, supra,* Cal.3d at p. 164, and also citing *Ramirez v. Plough, Inc., supra,* 6 Cal.4th at p. 547.) He reasoned that Evidence Code section 669(a) thus states only a rule of evidence, not a rule of tort liability, and "does not, by itself, modify the

*Knight* rule. The Legislature clearly has the power to modify *Knight*, but whether a particular statute has done so must be determined from that statute itself, not merely by determining whether the four elements of [Evidence Code] section 669(a) are met." (*Cheong, supra,* 16 Cal.4th at p. 1079 (conc. opn. of Chin, J.).)

We note that section 38305 was enacted in 1976, many years before our high state court decided *Knight, supra,* 3 Cal.4th 296, in 1992, and it has never been amended. (See fn. 5, *ante.*) Thus, it cannot be argued that section 38305 itself evinces any intention by the Legislature to modify or abrogate the *Knight* rule. We hold that the provisions of section 38305, read in conjunction with Evidence Code section 669, do not abrogate the *Knight* primary assumption of the risk doctrine, and thus do not impose on participants in the sport of off-roading a higher or different duty than is established under *Knight, supra,* 3 Cal.4th 296. The *Knight* rule, which holds that a participant in a recreational activity breaches a legal duty of care to other participants only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport (*id.* at p. 320), thus still applies even if an off-roading participant's violation of the basic speed law provisions of section 38305, combined with Evidence Code section 669, creates a presumption of negligence under the negligence per se doctrine codified in that Evidence Code section.

### b. *Section 38316*

The second Vehicle Code section at issue in this appeal, section 38316 (reckless driving), proscribes the driving of off-highway motor vehicles with a "willful and wanton disregard for the safety of other persons or property." We reject Distefano's contention that he has met his burden of showing there is a triable issue of material fact as to whether the manner in which Forester drove his dune buggy constituted reckless disregard for the safety of others within the meaning of section 38316, and thus whether Forester is liable under that section despite the *Knight* rule.

In his written opposition to Forester's summary judgment motion, Distefano argued that Forester violated section 38316 by (1) cresting the blind hill in the center of the dirt trail at a speed of about 30-40 miles per hour, (2) failing to have another person act as a spotter, and (3) failing to equip his dune buggy with a "whipper" (a long antenna). ■ We hold that although driving fast up and down blind hills in the middle of a dirt trail and attempting to become airborne at the crests of such hills is careless conduct, for reasons already discussed it is an integral part of the sport of off-roading,

and the risk that such conduct may result in a collision with another off-highway vehicle approaching from the opposite side of the same blind hill is inherent in this sport.

 We also conclude as a matter of law that, for purposes of the *Knight* rule, Forester's conduct in driving fast in the middle of the dirt trail while ascending the blind hill was not so reckless as to be totally outside the range of the ordinary activities involved in the sport of off-roading. We hold that such conduct did not constitute "willful and wanton disregard for the safety of other persons or property" within the meaning of section 38316 and, even were we to conclude that it did, section 38316 did not establish an independent duty the breach of which would expose Forester to tort liability despite the *Knight* primary assumption of the risk doctrine. Section 38316, like section 38305, was enacted in 1976, and it was amended once in 1983, almost 10 years before the Supreme Court decided *Knight*. (See fn. 6, *ante*.) Thus, section 38316 must be interpreted and applied to the undisputed facts of the instant case in light of the *Knight* decision and its progeny. Absent an amendment to section 38316 evincing a legislative intent to impose tort liability for a violation of the statutory duty created by section 38316 despite the *Knight* rule, we conclude the statutory duty set forth in that section does not supplant the common law duties that exist in a sports setting under the high court's *Knight* rule. We hold that the provisions of section 38316 do not abrogate the *Knight* primary assumption of the risk doctrine, and thus do not impose on participants in the sport of off-roading a higher or different duty in tort than is established under *Knight*.

 We also reject on several grounds Distefano's additional contention that Forester may be held liable in tort for violation of section 38316 based on allegations that Forester failed to have another person act as a spotter on top of the blind hill when he crested it in his dune buggy, and that he failed to equip his dune buggy with a whipper. First, Distefano has not alleged in his complaint a claim based on violation of section 38316, and for reasons already discussed he may not seek to amend his pleading for the first time on appeal from a summary judgment.

Second, even if he had alleged such a claim, Distefano has failed to show that Forester's spotter and whipper omissions constituted "willful and wanton disregard for the safety of other persons or property" within the meaning of section 38316. Distefano's only evidence that Forester should have had a spotter at the top of the blind hill consists of a declaration by another off-roading participant, who witnessed the accident, stating that "it is important" to have a spotter at the top of a hill when one intends to crest the hill while "going hot" (airborne). Distefano's sole evidence that Forester should

have used a whipper consists of Distefano's own declaration stating that "many" off-roading participants use them. At most, the record shows that such omissions constituted negligence.

Third, because this action arose from a sports setting involving off-roading, we conclude that even if Distefano had been able to present evidence that Forester's spotter and whipper omissions constituted a breach of his statutory duty under section 38316 to avoid driving an off-highway motor vehicle with a "willful and wanton disregard for the safety of other persons or property," such evidence would be insufficient to create a triable issue of material fact unless it also showed Forester had engaged in the type of reckless conduct for which he could be held liable in tort under the *Knight* rule: Conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport. (*Cheong, supra,* 16 Cal.4th at p. 1068; *Knight, supra,* 3 Cal.4th at p. 320.) For reasons discussed *ante,* we have concluded that section 38316 does not abrogate the *Knight* primary assumption of the risk doctrine, and thus does not impose on participants in the sport of off-roading a higher or different duty in tort than is established under *Knight.*

Applying the *Knight* rule, we conclude that Distefano has failed to show there is a triable issue of material fact whether Forester, by failing to use a spotter or equip his dune buggy with a whipper, intentionally injured him or engaged in conduct that was so reckless as to be totally outside the range of the ordinary activities involved in the sport of off-roading as the *Knight* rule requires for imposition of tort liability. As already discussed, Distefano's evidence shows only that one coparticipant stated in a declaration that "it is important" to have a spotter at the top of a hill when one intends to crest it while "going hot," and Distefano himself has stated that "many" off-roading participants use whippers. Such evidence is insufficient to create a triable issue of material fact under the applicable *Knight* rule. We thus hold as a matter of law that Forester owed no duty in tort to Distefano to use a spotter or equip his dune buggy with a whipper to reduce the risk of collision that was inherent in the off-roading activities in which the parties were participating at the time the accident occurred. (*Knight, supra,* 3 Cal.4th at p. 320.)

Our holding is consistent with other case law authorities that have applied the *Knight* primary assumption of the risk doctrine to bar tort liability for a sport activity participant's failure to take measures that could have prevented an accident involving a risk inherent in such activity. (See *Balthazor v. Little League Baseball, Inc.* (1998) 62 Cal.App.4th 47, 52 [72 Cal.Rptr.2d 337] [Little League had no duty to reduce the inherent risk to a player of being struck with a baseball by providing helmets with faceguards to players];

*Mosca v. Lichtenwalter* (1997) 58 Cal.App.4th 551, 554 [68 Cal.Rptr.2d 58] [fisherman had no duty to use a safer method of releasing kelp from a fishing line to reduce the inherent risk in fishing of being hit by a sinker attached to a recoiling fishing line]; *Dilger v. Moyles* (1997) 54 Cal.App.4th 1452, 1455-1456 [63 Cal.Rptr.2d 591] [golf etiquette requiring players to shout "fore" before hitting a golf ball that may endanger another player imposed no duty to shout "fore" because the risk of being struck by an errant ball was inherent in golf, and failure to shout "fore" did not amount to intentional infliction of injury or reckless conduct]; *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1634 [53 Cal.Rptr.2d 657] [figure skater had no duty to check her route before beginning a backward spiral because the risk of being cut by the blade of a backward-moving skater was inherent in the sport of figure skating]; & *Stimson v. Carlson* (1992) 11 Cal.App.4th 1201, 1205 [14 Cal.Rptr.2d 670] [sailboat captain had no duty to yell out course changes to protect a member of his crew from being struck by a swinging boom because the risk of such event was inherent in the sport of sailing].)

Distefano's reliance on *Freeman, supra,* 30 Cal.App.4th 1388, is misplaced. In that case, the plaintiff skier was seriously injured when the defendant skier, who had been consuming alcoholic beverages, fell on top of her while they were skiing. (*Id.* at p. 1391.) Reversing the trial court's grant of summary judgment in favor of the defendant, the Court of Appeal in *Freeman* applied de novo the *Knight* primary assumption of the risk doctrine and held that the defendant had not established the defense of primary assumption of the risk as to all of the risks that may have contributed to the plaintiff's injuries because the defendant's consumption of alcoholic beverages was totally outside the range of ordinary activities involved in the sport of downhill snow skiing, and the increased risk of a collision between a drinking skier and other skiers was not inherent in the sport. (*Id.* at pp. 1396-1397.) The *Freeman* court also reasoned that "[t]he consumption of alcoholic beverages could be prohibited during or shortly before skiing without fundamentally altering the nature of the sport" because "[t]he elimination of alcohol would not deter skiers from accepting the challenges of moguls, fast slopes, deep powder, or tight turns." (*Id.* at p. 1396.) *Freeman* is distinguishable. Here, there is no evidence that Forester increased the risk of a collision between his dune buggy and Distefano's motorcycle by consuming alcoholic beverages. Imposing tort liability on Forester based on his undisputed acts of driving fast in the middle of a narrow dirt trail and cresting a blind hill while going hot, and for not using a spotter or whipper, would have the effect of deterring other participants from vigorously participating in the sport of off-roading with its many obvious inherent risks.

Distefano's reliance on *Campbell, supra,* 75 Cal.App.4th 823, is also misplaced. In *Campbell,* the plaintiff skier was seriously injured when the

defendant's runaway snowboard hit the plaintiff in the back as she was sitting on the slope putting on her skis. (*Id.* at p. 825.) A county ordinance and a skier responsibility code posted at the ski resort required snowboarding participants to wear a retention strap that attached to the bindings of the board and was secured to the snowboarder's leg or boot. (*Ibid.*) The undisputed facts established that the defendant's snowboard was not equipped with such a strap on the day of the accident. (*Ibid.*) The trial court applied the *Knight* primary assumption of the risk doctrine and granted summary judgment in favor of the defendant on the ground that the risk of being injured by runaway snowboards was inherent in the sport of skiing and there was no evidence of recklessness by the defendant. (*Id.* at p. 826.)

The Court of Appeal in *Campbell* reversed the judgment. (*Campbell, supra,* 75 Cal.App.4th at p. 831.) The court expressly declined to address the issue of whether Evidence Code section 669 (see fn. 7, *ante*), when read in conjunction with the subject county ordinance, established an independent duty of care that would override the *Knight* primary assumption of the risk doctrine. (*Campbell, supra,* 75 Cal.App.4th at p. 829, fn. 3.) The *Campbell* court concluded, however, that the ordinance and the skier responsibility code "demonstrate[d] a recognition that retention straps reduce[d] the risk of injury from runaway ski equipment" (*id.* at p. 829), and thus a jury could have found that the defendant's use of a snowboard without the retention strap, in violation of the posted rules of the ski resort and the county ordinance, "unnecessarily increased the danger that his snowboard might escape his control and injure other participants such as plaintiff." (*Ibid.*)

Applying the *Freeman* test for determining what risks are inherent in a sport (*Freeman, supra,* 30 Cal.App.4th at p. 1395, discussed, *ante*), the *Campbell* court concluded that because use of a mandatory retention strap would not chill or deter vigorous participation in the sports of skiing or snowboarding, the defendant owed to the plaintiff a duty of care not to increase the risks of skiing beyond those inherent in the sport. (*Campbell, supra,* 75 Cal.App.4th at p. 830.)

*Campbell* is distinguishable. As the Court of Appeal acknowledged in that case, the key inquiry is whether the risk that led to the plaintiff's injury, " '. . . involved some feature or aspect of the game which is inevitable or unavoidable in the actual playing of the game.' [Citation.]" (*Campbell, supra,* 75 Cal.App.4th at p. 830.) Here, fast and aggressive driving is inevitable in the sport of off-roading, and imposition on Forester of tort liability on the facts of the instant case would chill or deter vigorous participation in the sport. (See *Freeman, supra,* 30 Cal.App.4th at p. 1394.)

### iv. *Conclusion*

For the foregoing reasons, we hold that Forester is entitled to summary judgment. Accordingly, we affirm the judgment.

### DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

Benke, Acting P. J., and McDonald, J., concurred.