Filed 9/6/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

HUNTSMAN-WEST FOUNDATION et al.,

      Plaintiffs and Appellants,

v.

MELINDA SUSAN SMITH,

      Defendant and Respondent.

E081025

(Super.Ct.No. RIC2004136)

OPINION

APPEAL from the Superior Court of Riverside County. Eric A. Keen, Judge. Affirmed.

Garrett & Jensen and Boyd F. Jensen II for Plaintiffs and Appellants.

The Safarian Firm, Harry A. Safarian and Christina S. Karayan for Defendant and Respondent.

Plaintiffs and Appellants Andrea Klein Gregg (Gregg) and the Huntsman-West Foundation (the Foundation; collectively, plaintiffs) appeal the grant of a summary judgment motion granted in favor of defendant and respondent Melinda Susan Smith (Smith).

1

Gregg dated Dennis James Babcock (Babcock). Gregg had created the Foundation and planned to donate her assets to be used for charitable endeavors. Babcock lived on Dodd Street in Mira Loma (Premises). Babcock lived alone on the Premises, which had belonged to his deceased wife, Mary Babcock (Mary[1]). When Mary passed away, Babcock was allowed to remain on the Premises until he remarried. After he remarried or upon his death, Mary's daughter, Smith, would be given the Premises. At some point in their relationship, Babcock allowed Gregg to store her items (Personal Property) on the Premises in a trailer and in the garage. When the relationship soured, Gregg wanted the Personal Property returned but Babcock initially insisted that he could not allow her access to the Premises. When Gregg was finally able to access the Premises, most of Gregg's Personal Property was missing from the trailer and garage.

Plaintiffs brought suit against Babcock and Smith on the grounds of general negligence, intentional tort, and premises liability for the loss of the Personal Property. Smith brought her motion for summary judgment on the grounds that she had no duty to protect the Personal Property as she had no control over the Premises or the Personal Property. The trial court granted summary judgment.

On appeal, plaintiffs contend the trial court erred by sustaining Smith's evidentiary objections; that they properly raised the issues of agency, mutual interest, joint venture, and ratification in the form complaint and the trial court erred by finding they were not a

---

[1] We refer to some individuals by their first names for clarity due to shared last names. No disrespect is intended.

proper basis to deny the Motion; and, as to Gregg, that the trial court erroneously considered that Gregg had been convicted of elder abuse against Babcock.

## FACTUAL AND PROCEDURAL HISTORY

A.     COMPLAINT

On October 20, 2020, plaintiffs filed their complaint against Babcock and Smith (Complaint).[2]  Gregg had created the Foundation in 2019.  She intended to donate her assets to the Foundation as she wanted to support various charitable causes.  The Complaint included causes of action for general negligence, intentional tort, and premises liability.  Plaintiffs sought $1,029,714.96 in damages for the loss of Gregg's Personal Property.

In support of the Complaint, Larry Krepps (Krepps), president of the Foundation, provided a narrative as to the facts supporting the Complaint.[3]  Babcock proposed to Gregg in May 2015 but she did not agree to marry him until August 2015.  Babcock kept putting off the wedding date because he claimed to be afraid to tell Smith that he was getting married.  Babcock's ex-wife, Mary, had allowed him to stay in the Premises unless he remarried.

---

[2]  The motion for summary judgment was brought solely by Smith; Babcock is not a party to this appeal.

[3]  In setting forth the facts of the narrative by Krepps, which was presented with the Complaint, we do not rely on the facts in resolving the appeal.  The narrative is almost identical to the declaration submitted by Krepps in support of the opposition to the Motion, which the trial court found the majority of was based on hearsay, lack of foundation, improper conclusions of fact, and based on speculation and conjecture.

3

In 2019 Gregg moved the Personal Property, which consisted of clothes, fabric, gold, silver, and other assets, into the Premises; specifically, the garage and a trailer. Gregg put her own lock on the trailer and was the only person who possessed a key. Babcock promised to care for and protect the Personal Property.

In October 2019 Babcock advised Smith that he was going to marry Gregg. Smith was angry and advised Gregg to stay away from Babcock. Gregg asked Babcock if she could come to the Premises to ensure that her Personal Property was safe. He told her that she was not allowed on the Premises because Smith would not allow it. Krepps sent a letter to Babcock in August 2020 seeking to have access to the Premises so that Gregg could obtain the Personal Property. Gregg and Krepps obtained permission to enter the Premises to obtain the Personal Property from the Riverside County District Attorney's Office and on September 16, 2020, went to the Premises to view the Personal Property.

Babcock denied entry claiming that Smith had to be present because the Premises belonged to her and she was "in charge." Babcock finally allowed entry to Gregg. She went to the trailer and her lock had been removed; it was almost empty. Babcock would not tell Gregg what happened to the Personal Property. Some of the fabric she left in the garage was found sitting outside the garage. It had been damaged by rain, sun, and wind; most of the Personal Property was missing from the garage. Krepps insisted that Babcock later contacted him and stated he had taken the Personal Property.

As exhibits, plaintiffs provided an inventory of the Personal Property; photographs of the purported Personal Property; and photographs of the trailer and garage after the Personal Property was missing.

4

B.     MOTION FOR SUMMARY JUDGMENT

Smith filed a motion for summary judgment on November 22, 2022 (Motion). The ground for summary judgment was that there were no triable issues of fact based on her having no control over the Premises or Personal Property.

Smith contended that plaintiffs were unable to prevail on the three causes of action. As for premises liability, the undisputed facts unequivocally showed that Smith had no control over the Premises or the Personal Property. Smith owed no duty to Gregg. Any claims that Smith had any connection to the Personal Property was based on speculation and hearsay. As for the intentional tort, plaintiffs failed to allege the underlying tort. Further, they could not prevail on this claim as there was no evidence linking Smith to the Personal property.

Smith submitted a separate statement of undisputed facts (separate statement). She relied on her own declaration and excerpts from a deposition taken of Babcock. Babcock had lived on the Premises since 2015 when Mary passed away. Smith had not lived on the Premises for 40 years. Babcock exercised all control and management of the Premises. Starting in 2019, Gregg stored her Personal Property on the Premises. Smith had never been involved in the moving or storing of the Personal Property. Smith had never had any control over Babcock and his decisions regarding the Personal Property. Smith had never prevented Gregg from removing the Personal Property and had no control over the decision-making of Babcock in relation to the return or destruction of the Personal Property.

5

Smith submitted several exhibits with the Motion. Smith provided her own declaration. Also attached were excerpts from Babcock's deposition. In addition, Smith attached an incident report from the Riverside County Sheriff's Department regarding allegations of elder abuse and embezzlement against Babcock filed on October 22, 2019. Pursuant to the investigation, Babcock had allowed Gregg to handle his finances and agreed to move approximately $175,000 from his savings account into a joint account with Gregg. The amount was never transferred to the joint account, and he only had $200 in his bank account. He suspected Gregg had taken the money. She also took two of his credit cards and refused to return them. Gregg also wanted to change Babcock's trust. Further, Gregg was supposed to pay taxes for Babcock but the money was never paid. On October 28, 2021, Gregg pled guilty to elder abuse. She was ordered to pay $354,987.26 in restitution to Babcock.

C.  OPPOSITION TO MOTION

Plaintiffs filed opposition to the Motion on January 24, 2023. Plaintiffs alleged that the narration provided by Krepps with the Complaint supported the factual allegation that Smith had control of the Premises and the Personal Property. They insisted that Smith was the "overarching actor in 'controlling' access to the property and personally, her stepfather Dennis Babcock."

Plaintiffs provided a statement of facts but did not cite to any sources. They insisted that the separate statement presented by Smith did not comply with Code of Civil Procedure section 437c. The separate statement consisted of arguments of counsel that were unsubstantiated.

6

Plaintiffs provided that the Motion should be denied as Smith had a controlling relationship over Babcock. Krepps, Gregg, Larry Gregg (Larry[4]), and Christine Kidder (Kidder) could all testify about the controlling relationship. Further, Smith had provided deposition testimony, and in that testimony, she admitted to obtaining restraining orders for herself and Babcock against Gregg. Plaintiffs then provided authority on agency relationships, joint ventures, and ratification, but provided no argument as to how they applied to the case.

Attached to the Opposition were declarations by their attorney Boyd Jensen (Jensen), Krepps, Larry, Gregg, and Kidder. Jensen declared that Gregg had been made out to be a felon. He provided, "while that past behavior may be relevant, no foundation was made to exclude it (CASI 211.)"

Krepps also provided a declaration. He was a leader in the church attended by Gregg, Larry, Babcock, and Mary. Gregg asked him to be the CEO of the Foundation. He then provided the same information as contained in the narration of the Complaint. Krepps contacted Babcock to try to resolve the issues between Babcock and Gregg. Babcock told him that Babcock was not allowed to speak with Gregg. Krepps stated, "I am informed and believe that Melinda Smith was listening in because she took the phone from Dennis and spoke to me." Krepps tried to get her to allow Babcock to meet with Gregg, but Smith refused to let them meet or talk. Smith told him "something like she had him 'on lock-down.' " Krepps indicated that Smith made it clear she was in control

---

[4] Larry is Gregg's former spouse.

7

of Babcock. Krepps further declared that Smith had never contacted him about coming to the Premises to allow them to pick up the Personal Property. Krepps's declaration then provided the same information as in the narration.

Larry provided a declaration. He helped Gregg and Babcock move all of the Personal Property into the trailer and garage on the Premises. He went with Gregg on September 16, 2020, to try to gain access to the Premises to retrieve the Personal Property. Babcock told him directly that Smith had to be there because it was her house and she was in charge. Babcock finally allowed entry and the trailer was "almost" empty. Gregg saw some of her belongings around Babcock's house and took photographs.

Gregg provided her own declaration. Gregg acknowledged that since 2015, Babcock had maintained the Premises and paid all the expenses. Smith had not paid any of the expenses. However, she insisted that Smith was the owner of the Premises. She provided similar facts as the other declarants regarding her relationship with Babcock and that she stored the Personal Property on the Premises. Gregg insisted that Smith came to her house on October 22, 2019, with Babcock, and stated in their presence that Babcock was not to speak with Gregg. She insisted that Babcock told Gregg she could not retrieve the Personal Property because Smith would not allow it. She also made statements regarding conversations between Krepps and Smith, and also Babcock and Larry. Smith obtained a restraining order against Gregg.

Kidder's declaration was provide with the Opposition. She lived in Texas. She was Babcock's cousin. She insisted that after Mary died, Smith helped Babcock with his finances. At one point, Kidder wanted Babcock to visit her, but he said the flight was too expensive. Kidder declared she did not believe him, and "I thought most likely it was due to [Smith]'s control of his finances and his life. It was my observation that [Smith] did control his life." Kidder had been told that Smith owned the premises. She claimed to "know" that after Gregg stored her Personal Property on the Premises, she was not allowed to retrieve the Personal Property. Babcock was not cooperative "but it was definitely because [Smith] had a hold over him." She contacted Smith, but Smith got upset with her and refused to allow Babcock to contact Gregg. She called Babcock at one point in time and he was headed to see an attorney. He was frightened. Kidder believed he was only going to an attorney because Smith was controlling him. She called "protective services" about her concerns that Smith was controlling Babcock. She later found out that Smith had obtained a restraining order against Gregg.

Exhibits to the Opposition included an excerpt from a deposition taken of Smith on January 11, 2023. It showed that there was a restraining order against Gregg. Mary's will was also provided as an exhibit. The will provided that Babcock could use the Premises during his lifetime as long as he did not remarry. He was required to "pay all real property taxes, house fire and extended coverage insurance [and] keep the house in good repair." Upon his death or remarriage, the Premises would go to Smith, as the executor of the will.

Plaintiffs also submitted a statement of material disputed and undisputed facts. They disputed each of the facts in the separate statement that Smith had done nothing with the Personal Property and had no control over the items.

D.      EVIDENTIARY OBJECTIONS AND REPLY

Smith filed evidentiary objections against the Opposition. Objections 1 through 8 were to portions of the declaration provided by Krepps. The objections were on the grounds of hearsay, lack of personal knowledge, speculation, and lack of foundation. Objections 1 through 4 and 8 referred to Krepps's statements regarding conversations between Gregg and Babcock. This also involved his statement that he "learned" that Mary had placed in her will that Babcock could stay in the Premises until he remarried. He was "informed" that Babcock told Smith that Babcock was going to marry Gregg, and Smith went to Gregg's house to tell Smith to stay away from Babcock. It also included objections to statements about the events when Gregg and Larry went to the Premises to try to see the Personal Property. Objections 5 through 7 were based on Krepps's direct conversation with Smith about letting Babcock talk to Gregg, that she had Babcock in "lock-down," and Krepps's statement that it was clear Smith was in control of Babcock.

Objections 9 and 10 involved Larry's declaration. Smith objected on the grounds of hearsay, lack of personal knowledge, speculation, and lack of foundation. Smith objected that Larry could not attest to information he overheard about the Personal Property. Smith also objected to Larry's conversation with Babcock in which Babcock claimed that the Premises belonged to Smith and that he could not do anything without her permission.

10

Objections 11 through 23 involved objections to Gregg's declaration. Objection 11 involved Gregg's statement that the declaration was her "solemn testimony to the following facts" given under penalty of perjury. Objections 12 through 23 involved statements made by Babcock to Gregg in regard to what Smith would tell him, a text message from "Ted Spencer" about Smith, discussions Krepps had with Babcock, and actions taken by Kidder and Smith obtaining a restraining order against Gregg and showing fellow church members.

Objections 24 through 30 involved Kidder's declaration. Once again Smith objected on the grounds of hearsay, lack of personal knowledge, speculation, and lack of foundation. The objections involved all statements made by Kidder as to her belief that Smith was controlling Babcock.

Smith also filed a reply to the Opposition. Smith complained the Opposition was "littered" with unsubstantiated and irrelevant facts; it failed to address the legal issue that Smith had no control over the Premises where the Personal Property was stored. Smith argued that plaintiffs had failed to cite to any evidence in their statement of facts. Further, they failed to provide a separate statement of facts so that Smith could properly respond to any new material facts presented in the Opposition. Additionally, plaintiffs had not raised the issues of agency, ratification, or joint venture in the Complaint and could not raise them in the Opposition without filing an amended complaint.

11

E.     TRIAL COURT RULING

The trial court issued a tentative ruling on the Motion. The trial court reviewed the allegations in the Complaint. The trial court first addressed the evidentiary objections. It found that a majority of the statements made in the declarations submitted by Krepps, Gregg, Larry, and Kidder were inadmissible hearsay and/or the declarants lacked personal knowledge of the facts. It found, "Only [Smith]'s admissions in a purported phone conversation with Larry are admissible based on his personal knowledge and as an exception to hearsay. (Evid. Code § 1220.) SUSTAIN as to nos. 1-4, 8-10, 12-30; OVERRULE as to nos. 5-7, 11."

The trial court then addressed the negligence/premises liability cause of action. It first found that premises liability did not appear to apply to the case. Plaintiffs failed to allege a dangerous or defective condition on the Premises from which they suffered harm. The elements of negligence were more appropriately applied. The trial court concluded that plaintiffs could not establish that Smith owed a legal duty to them in regard to the Personal Property. Smith presented evidence that Babcock had been the sole occupant of the Premises where the Personal Property was stored since 2015; Smith had no control over the Personal Property; was not involved in the moving or storage of the Personal Property; and never exercised control over the Personal Property. Smith never instructed Babcock as to what he should do with the Personal Property. The trial court relied on the separate statement provided by Smith.

12

The trial court then addressed whether plaintiffs had presented admissible evidence to show a triable issue of material fact. The trial court found, "As pointed out by [Smith], the Opposition is littered with unsubstantiated and irrelevant facts. The only relevant fact is whether [Smith] had control over Plaintiffs' Personal Property or interfered with Plaintiffs' use of the Personal Property. However, Plaintiffs rely primarily on purported statements by [Babcock] about [Smith]'s control over him and the Premises. [Babcock]'s statements constitute inadmissible hearsay and cannot be relied upon to oppose summary judgment."

The trial court found that the only relevant evidence presented was Smith's statement to Krepps that she refused to allow Babcock to speak with Gregg. Further, evidence that she obtained a restraining order for herself and Babcock against Gregg. However, this evidence did not establish that Smith had any control over the Premises or the Personal Property. It did not show that she blocked access to the Premises. The evidence only established that Babcock refused Gregg and Larry access to the Premises and Personal Property. There was no evidence Smith denied access to Gregg.

The trial court also denied the claims of agency, ratification, and joint venture as they were not properly alleged in the Complaint. Further, there was no evidence submitted in support of the claims.

As for the cause of action for intentional tort, the trial court found that plaintiffs failed to allege any underlying tort. They failed to address the issue in the Opposition and did not seek to amend the Complaint. Further, even if they tried to amend, there was

13

no intentional tort to cover the situation. There was no evidence that Smith had control over the Personal Property.

On February 7, 2023, the matter was called for hearing and the parties presented oral argument. The reporter's transcript has not been provided to this court. The trial court adopted the tentative ruling and the Motion was granted. Judgment was entered on February 15, 2023; an amended judgment was filed on March 21, 2023. Smith was awarded $8,867.02 in costs as the prevailing party. Plaintiffs filed a notice of appeal on April 15, 2023.

## DISCUSSION

On appeal, plaintiffs claim the trial court erred by granting Smith's evidentiary objections and that the Motion would not have been granted if the evidence had been admitted. Further, plaintiffs contend the trial court improperly concluded that they could not raise the issues of agency, mutual interest, joint venture, and ratification. Finally, plaintiffs address the introduction of Gregg's felony conviction for elder abuse.

A.     EVIDENTIARY OBJECTIONS

Plaintiffs contend the trial court erred by granting the objections made by Smith to the evidence presented in the Opposition, specifically the declarations of Krepps, Larry, Gregg, and Kidder.

There is a split of authority on the proper standard of review of the trial court's rulings on evidentiary objections. In *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, the Sixth District Court of Appeal concluded the de novo standard of review applied to evidentiary rulings "determined on the papers and based on questions of law such as

14

hearsay." (*Id.* at p. 1451.)  The *Pipitone* court based its conclusion on *Reid v. Google, Inc.* (2010) 50 Cal.4th 512.  In *Reid*, the Supreme Court was presented with evidentiary objections that had not been ruled on by the trial court.  The *Reid* court applied the de novo standard of review to evidentiary objections upon which the trial court had failed to rule.  (*Reid*, at p. 535; see also *Doe v. SoftwareONE Inc.* (2022) 85 Cal.App.5th 98, 102-103 (*Doe*).)  The Supreme Court reasoned, "First, because there was no exercise of trial court discretion, the Court of Appeal had no occasion to determine whether the trial court abused it.  Second, Google expressly invited the Court of Appeal to address its evidentiary objections, which the Court of Appeal reviewed de novo, consistent with the general standard of review applicable to summary judgment rulings, that any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reed*, at p. 535.)  The Supreme Court declined to address the standard of review in those cases in which the trial court ruled on the evidentiary objections.  (*Ibid.*)

In *Doe*, *supra*, 85 Cal.App.5th 98, the appellate court addressed the question left unresolved in *Reid* and found that evidentiary rulings are more properly reviewed for an abuse of discretion.  (*Doe*, at pp. 103-104; see also *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.)  The court reasoned, "[T]rial courts typically rule on evidentiary objections in summary fashion, which often prevents us from determining the precise nature (i.e., principally legal or factual) of the trial court's ruling.  And rulings on evidentiary objections often 'involve trial courts making

15

qualitative and sometimes equitable determinations,' which are the sort of decisions we typically review for abuse of discretion." (*Doe*, at p. 104.)

We will follow *Doe* and apply the abuse of discretion standard.

1. *LARRY KREPPS*

First, plaintiffs insist that Krepps's narration attached to the Complaint was attached to the Motion, which somehow resulted in an admission by Smith that it was properly considered evidence. The narration was similar to Krepps's declaration attached to the Opposition. Plaintiffs provide no legal authority for their proposition. By failing to provide a cogent legal argument, the claim has been forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*United*) [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].)

Second, plaintiffs contend the trial court erred by sustaining Objections 1 through 4, and 8 to Krepps's declaration. The trial court found that the conversations between Gregg and Smith about Babcock attested to by Krepps were properly objected to on the grounds of hearsay and lack of personal knowledge. Krepps also referred to Babcock's arrangement with Mary to stay in the Premises and the events when Gregg and Larry went to the Premises.

" ' "Hearsay evidence" is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.' [Citation.] In other words, 'a hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove

16

that assertion is true.' " (*Doe*, *supra*, 85 Cal.App.5th at p. 108.)  Krepps was not present during the above discussions.  He lacked personal knowledge of the conversations; it was clearly hearsay.

Plaintiffs appear to claim that despite Krepps reporting "what he learned from others, which was certainly hearsay," the evidence was admissible based on his personal knowledge and working with the parties in the Foundation and as a church leader.  They provide no legal authority for their claim that his personal knowledge of the parties is an exception to the hearsay rule, and have waived such claim.  (*United*, *supra*, 36 Cal.App.5th at p. 146.)

Objections 5 through 7 were based on Krepps's conversation directly with Smith about letting Babcock talk to Gregg, and that she was in control of Babcock.  The trial court did not exclude this evidence; no error occurred as to this evidence.

2.     *LARRY GREGG*

Objections 9 and 10 involved Larry's declaration.  Smith objected that Larry could not attest to information he "overheard" about the Personal Property.  Smith also objected to Larry's conversation with Babcock in which Babcock claimed that the Premises belonged to Smith and that he could not do anything without her permission.  Plaintiffs acknowledge that this was hearsay but that an exception applies.  While plaintiffs discuss different exceptions, they do not delineate the applicable exception in their argument.

Such failure to specify the legal basis in their argument forfeits the claim on appeal.[5]
(*United*, *supra*, 36 Cal.App.5th at p. 146.)

          3.     *ANDREA GREGG*

Objections 11 through 23 involved objections to Gregg's declaration. Objection 11 involved Gregg's statement that the declaration was her "solemn testimony to the following facts" given under penalty of perjury. The trial court overruled this objection. Objections 12 through 23 involved statements made by Babcock to Gregg in regards to what Smith would tell him, a text message from "Ted Spencer" about Smith, discussions Krepps had with Babcock, actions taken by Kidder, and Smith obtaining a restraining order against her and showing their fellow church members. Much of this statement was based on hearsay, lack of personal knowledge, and speculation.

Once again, plaintiffs do not provide the hearsay exceptions for the statements made by Gregg, of which a majority involved information she obtained from other sources. These statements were hearsay and she does not provide an exception. The failure to provide any legal authority or analysis forfeits any claim on appeal. (*United*, *supra*, 36 Cal.App.5th at p. 146.)

---

[5] For the first time in the reply brief, plaintiffs address some of the exceptions to the hearsay rule as it applied to the declarations attached to the Opposition. We generally do not consider claims raised for the first time in the reply brief. (*People v. Peevy* (1998) 17 Cal.4th 1184, 1206.) Plaintiffs were well aware of the hearsay issue at the time of the filing of their opening brief and should have raised the exceptions to give Smith an opportunity to respond.

4.    *CHRISTINE KIDDER*

Objections 24 through 30 involved statements made by Kidder.  Once again Smith objected on the grounds of hearsay, lack of personal knowledge, speculation, and lack of foundation.  The objections involved the statements made by Kidder that involved her belief that Smith was controlling Babcock.  These included statements that since he could not fly to Texas, Smith was controlling Babcock.  Further, Smith objected to statements she knew that Gregg was never allowed on the Premises to retrieve her items.  Kidder did not explain how she knew this information.  These statements involve hearsay, lack foundation as there is no time period included, and are based on speculation.

Plaintiffs refer to lay opinion testimony of a witness but do not provide proper argument or authority on how this was applicable to the speculative statements made by Kidder.  The remainder of Kidder's statements rely on statements made to her by other parties.  This was properly excluded as hearsay.  Plaintiffs do not provide any argument as to the hearsay exception applicable, waiving the claim on appeal.  (*United*, *supra*, 36 Cal.App.5th at p. 146.)

Based on the preceding, the trial court did not abuse its discretion by sustaining the evidentiary objections raised by Smith.

B.    MERITS OF THE MOTION

Even if the trial court improperly ruled on the evidentiary objections in this case, admission of the testimony would not result in a more favorable outcome for plaintiffs.  "[A]n erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in

19

the absence of the error." ' " (*Twenty-Nine Palms Enterprises Corp. v. Bardos*, *supra*, 210 Cal.App.4th at p. 1449.)

"A motion for summary judgment is properly granted only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702, fn. omitted.) "To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence necessary to establish at least one element of the cause of action. [Citation.] Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.' " (*Id.* at pp. 702-703)

"We review a grant of summary judgment de novo." (*Luebke v. Automobile Club of Southern California*, *supra*, 59 Cal.App.5th at p. 703.) " 'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards.' " (*Apex Solutions, Inc. v. Falls Lake Ins. Management Co., Inc.* (2024) 100 Cal.App.5th 1249, 1256.)

In the Complaint, plaintiffs presented three causes of action that included negligence, premises liability, and intentional tort. "The elements of a negligence cause of action are 1) the existence of a duty, 2) a breach of that duty, 3) injury to the plaintiff

20

caused by the defendant's breach, and 4) actual damages." (*Romero v. Los Angeles Rams* (2023) 91 Cal.App.5th 562, 567.) " ' "The elements of a cause of action for premises liability are the same as those for negligence." ' " (*Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 145.) " 'Since the existence of a duty of care is an essential element in any assessment of liability for negligence [citations], entry of summary judgment in favor of the defendant in a negligence action is proper where the plaintiff is unable to show that the defendant owed such a duty of care.' " (*Walker v. Sonora Regional Medical Center* (2012) 202 Cal.App.4th 948, 958.)

Here, the Complaint alleged that Smith had a duty to protect the Personal Property stored on the Premises. The Motion presented that Smith had no control over the Premises or Personal Property and could not have foreseen that it would be damaged or removed by Babcock. Babcock had control over the Premises until he remarried. He took responsibility for the Personal Property. Smith declared that she had no control over the Premises and never exercised any control over the Personal Property. Smith met her initial burden of showing that she owed no legal duty to plaintiffs.

The evidence that was presented in the Opposition, including the evidence excluded, did not establish there was a triable issue of fact as to whether Smith had any control over the Premises or the Personal Property. The evidence may have shown that Smith had some control over Babcock's finances, but it did not establish that this extended to the Premises or the Personal Property. The will provided showed that Babcock was in control of the Premises until he remarried. None of the evidence presented showed that Smith had taken over control of the Premises other than Babcock's

21

statement that Smith would not allow him to let Gregg into the Premises because she was in control of him. There was no explanation as to how Smith had taken over the Premises when Babcock had full control under Mary's will.

Further, there was no evidence that Smith personally blocked access to the Premises so that Gregg could not retrieve her Personal Property. Moreover, Babcock let Gregg access the Premises. Smith was not involved in the removal of the Property. If Krepps's statement is considered, Babcock told Krepps that he took the Personal Property out of the garage and trailer. No evidence was presented that Smith had any knowledge or control over Babcock removing the Personal Property. The trial court properly concluded there was no triable issue of fact as to duty to support the premises liability and negligence causes of action.

Further, as to the cause of action of intentional tort, there was no allegation of a tort in the Complaint. Plaintiffs alleged that there was a cause of action of intentional tort and referred to the narrative provided by Krepps. In the narrative, Krepps never refers to an intentional tort. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159.) A tort, whether intentional or negligent, involves a violation of a legal duty owed by the defendant to the person injured. (*Long Beach Memorial Center v. Kaiser Foundation Health Plan, Inc.* (2021) 71 Cal.App.5th 323, 336.)

As stated, there was no intentional tort identified in the pleadings.  Further, as set forth, *ante*, there was no evidence of a duty of Smith to protect the Personal Property even considering that she may have exercised some control over Babcock.  Since there was no triable issue of fact on the causes of action of negligence, premises liability and intentional tort, summary judgment was properly granted.

C. AGENCY, MUTUAL INTEREST, RATIFICATION AND JOINT VENTURE

Plaintiffs contend that the trial court's ruling is "false" in finding that the claims of agency, mutual interest, ratification, and joint venture were not alleged in the Complaint and were not proper grounds upon which to oppose the Motion.

" 'The pleadings delimit the issues to be considered on a motion for summary judgment.  [Citation.]'  [Citation.]  Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' "  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253; see also *Whelihan v. Espinoza* (2003) 110 Cal.App.4th 1566, 1576.)  "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings.  [Citation.]  If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion."  (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264-1265; see also *Laabs*, at p. 1253.)

It is without dispute that plaintiffs only alleged the causes of action of negligence, premises liability, and intentional tort in the Complaint and they never sought to amend the Complaint. The Complaint and narration never presented claims of agency, ratification, mutual interest, or joint venture. The trial court properly concluded that the Motion could not be denied on issues not raised by the pleadings.

Plaintiffs argue on appeal that they in fact alleged agency in the form Complaint. In paragraph 6 of the Complaint, it was stated, "The true names of defendants sued as Does are unknown to plaintiff." They then checked the box, "Doe defendants (specify Doe numbers): 1 to 100 were the agents or employees of other named defendants and acted within the scope of that agency or employment." Also checked the box, "Doe defendants (specific Doe Numbers):_____ are persons whose capacities are unknown to plaintiff."

This paragraph does not apply to Smith or Babcock as suggested by plaintiffs. Smith was not named as a Doe. Further, the Complaint did not allege agency, mutual interest, ratification, or joint venture as causes of action. Plaintiffs never amended to add these claims prior to the hearing on the Motion. It is unknown if they sought to amend at the hearing because the record of the proceedings has not been provided to this court. The trial court properly granted the Motion finding these claims were not properly raised in the Complaint.

D.     <u>CRIMINAL CONVICTION</u>

Plaintiffs raise a claim in regards to the consideration of the criminal conviction for elder abuse against Gregg that was reviewed by the trial court. They entitle the claim

as "Summary of Evidence—Even For Felons"  At one point in their argument, it appears that they are arguing the trial court should not have considered the criminal conviction.  However, they also appear to argue that it was further evidence of Smith's control over Babcock.  This court cannot discern what claim plaintiffs are raising.  " '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)  We cannot discern the argument raised by plaintiffs and do not address the claim.

## DISPOSITION

We affirm the trial court's order granting the motion for summary judgment.  Smith shall recover her costs on appeal as the prevailing party.

CERTIFIED FOR PUBLICATION

MILLER
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

25